Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Parte Apelado<br><br>v.<br><br>OMAR EMANUEL FALCÓN TORRES<br><br>Parte Apelante | KLAN202500118 | *Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón*<br><br>Caso núm.:<br>D LE2021G0150<br><br>Sobre:<br>Ley 54 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Robles Adorno[1]

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de junio de 2026.

El 28 de enero de 2025, el señor Omar Emanuel Falcón Torres (el señor Falcón Torres o el apelante) compareció ante nos mediante un recurso de *Apelación,* en el que solicitó que revoquemos la *Sentencia* emitida el 17 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario).

En el aludido dictamen, el TPI condenó al apelante a una pena de nueve (9) años de reclusión, luego de que un jurado, de manera unánime, lo encontrara culpable por violentar el Art. 2.8 de la *Ley para la Prevención e Intervención con la Violencia Doméstica,* Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 628 (en adelante, Ley Núm. 54-1989).

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución de la Jueza Rivera Marchand.

**I.**

El caso de autos tuvo su origen cuando el 5 de mayo de 2021, el Ministerio Público presentó una *Denuncia* contra el señor Falcón Torres por violación al Art. 2.8 de la Ley Núm. 54-1989, *supra*.[2] El 9 de agosto de 2021, se celebró la Vista Preliminar y el TPI determinó causa probable para juicio en la denuncia por infracción al Art. 2.8 de la Ley Núm. 54-1989, *supra*.[3]

El 10 de agosto de 2021, el Ministerio Público radicó un pliego acusatorio. Según la acusación, entre los días 16 al 19 de abril de 2021 y en Bayamón, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Bayamón, el señor Falcón Torres de forma ilegal, voluntaria, a propósito, y criminalmente violó la OPA-2021-011854, vigente desde el 13 de abril de 2021 hasta el 4 de mayo de 2021, expedida por la Honorable Juez Catherine M. Brunelle Curet del Tribunal de Bayamón, a favor de la señora Paola Díaz Negrón, con quien el apelante sostuvo una relación consensual.[4] La alegada violación consistió en que le realizó llamadas telefónicas y mensajes por las aplicaciones de "Twitter" y "WhatsApp", a sabiendas de que le estaba prohibido por la Orden de Protección emitida por el Tribunal.[5]

Asimismo, el Ministerio Público alegó la reincidencia agravada por el apelante haber sido convicto con anterioridad, por la comisión de otros delitos graves bajo la Ley Núm. 54-1989, *supra*, y la *Ley contra el acecho en Puerto Rico*, Ley Núm. 284 de 21 de agosto de 1999, según enmendada, 33 LPRA sec. 4013, *et seq*.[6]

Luego de celebrado el juicio ante un jurado, el jurado emitió un veredicto unánime de culpabilidad por infracción al Art. 2.8 de la Ley Núm. 54-1989, *supra*. El apelante fue sentenciado a cumplir

---

[2] *Véase* autos originales.
[3] *Véase* autos originales.
[4] *Véase* autos originales.
[5] *Véase* autos originales.
[6] *Véase* autos originales.

ocho (8) años de prisión por infracción al Art. 2.8 de la Ley Núm. 54-1989, *supra,* y un (1) año de prisión por la reincidencia, para un total de nueve (9) años de cárcel.[7]

Inconforme, el apelante presentó ante nos el recurso de epígrafe en el que formuló los siguientes señalamientos de error:

> Primer error: Erró el Honorable Jurado al emitir un veredicto de culpabilidad en vista de que la prueba presentada es insuficiente para establecer más allá de duda razonable todos y cada uno de los elementos del delito imputado, en clara contravención a la presunción de inocencia que cobija a todo acusado.

> Segundo error: Erró el Jurado, al declarar al acusado-apelante culpable con prueba insuficiente para establecer los elementos del delito grave imputado.

El 16 de abril de 2026, la Oficina del Procurador General de Puerto Rico, en representación del Ministerio Público, presentó el *Alegato de el Pueblo de Puerto Rico.*

Con el beneficio de la comparecencia de las partes, procederemos a atender el recurso ante nos.

**II.**

**A.**

La Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, consagra la presunción de inocencia como uno de los derechos fundamentales que le asiste a toda persona acusada de cometer un delito. *Pueblo v. Negrón Ramírez,* 213 DPR 895, 907 (2024). Toda persona acusada goza de la presunción de inocencia en los procesos criminales, cobijándole desde el inicio de la acción penal hasta el fallo o veredicto de culpabilidad. Dicha presunción también forma parte de las Reglas 110 y 304 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110 y 304.

A esos efectos, todo acusado se considera "inocente" hasta que el Estado pruebe que es culpable más allá de duda razonable mediante la presentación de prueba suficiente y satisfactoria sobre

---

[7] *Véase* autos originales.

cada uno de los elementos del delito y su conexión con el acusado. *Pueblo v. Irizarry*, 156 DPR 780, 787-788 (2002). Es decir, el Estado debe presentar prueba satisfactoria y suficiente en derecho que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018). Así reconocido, en los procesos judiciales penales, se entiende que el Estado es quien tiene el peso de la prueba. *Id.*; *Pueblo v. García Colón I*, 182 DPR 129, 174 (2011).

Dicho esto, la Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, R. 110, establece que, "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá". Como vemos, conforme a nuestro ordenamiento jurídico, el acusado no tendrá obligación alguna de aportar prueba para defenderse y podrá descansar plenamente en la presunción de inocencia que le cobija. *Pueblo v. Irizarry, supra,* pág. 787.

El juzgador de hechos vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos. Regla 110 de Evidencia, *supra.* En casos criminales con derecho a juicio por Jurado, esta función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos en base a ésta y aplicar el derecho según le instruya el tribunal. *Pueblo v. Negrón Ramírez, supra*, págs. 908-909; *Pueblo v. Santa Vélez*, 177 DPR 61, 65-66 (2009).

No obstante, tal estándar de exigencia probatoria no significa que el Estado tenga que presentar prueba que establezca la culpabilidad del acusado con certeza matemática. *Pueblo v. Negrón Ramírez, supra,* pág. 907. La prueba sobre la culpabilidad del acusado es satisfactoria cuando produce certeza o convicción moral

en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Negron Ramírez, supra*, pág. 908.

En cuanto a la duda razonable que acarrea la absolución del acusado, no es una duda especulativa o imaginaria, ni cualquier duda posible. *Pueblo v. Irizarry, supra*, pág. 788. Más bien, se trata de aquella duda que es producto de una consideración serena, justa e imparcial de la totalidad de la evidencia del caso. *Id.* Es decir, existe duda razonable cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba. *Pueblo v. García Colón I, supra*, pág. 175.

Con lo anterior expuesto, como cuestión de derecho, la determinación sobre si se probó la culpabilidad del acusado más allá de duda razonable es revisable en apelación, toda vez que, "la apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y derecho". *Pueblo v. Irizarry, supra*; *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454, 472 (1988).

**B.**

Al evaluar planteamientos relacionados con insuficiencia de la prueba, los tribunales apelativos debemos conceder gran deferencia a las determinaciones del juzgador de hechos. *Pueblo v. Negrón Ramírez, supra*, pág. 910; *Pueblo v. García Colón I, supra*; *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). Ello responde a que el tribunal sentenciador —o el jurado, según sea el caso— tuvo la oportunidad de observar directamente el comportamiento, actitud y credibilidad de las personas testigos mientras prestaban su testimonio. *Pueblo v. García Colón I, supra*, pág. 165; *Pueblo v. Negrón Ramírez, supra*; *Penna Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1025 (2024); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022).

De modo que, el Tribunal Supremo ha expresado que: "[l]a intervención con la evaluación de la prueba testifical procedería en

casos en los que luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884, 917-918 (2016). Por tanto, "[c]uando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier hecho". *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012).

A la luz de lo anterior, el foro apelativo no deberá intervenir con las determinaciones de hechos, con la adjudicación de credibilidad realizada por los foros primarios, ni con el ejercicio de su discreción, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. *WMM, PFM et al. v. Colegio et al.*, 211 DPR 871, 903 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022). Cónsono con lo anterior, cuando una apelación cuestiona la validez un fallo o veredicto contrario a sus intereses, de ordinario no intervendremos con dichas determinaciones. *Pueblo v. Negrón Ramírez, supra*, pág. 912. Por lo que, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, el foro apelativo estará imposibilitado de intervenir con la apreciación de la prueba y las determinaciones de los tribunales de instancia. *Id.*

En cuanto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Pueblo v. Negrón Ramírez, supra*; *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013).

En cambio, el foro intermedio podrá intervenir con la apreciación de la prueba cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009). A

tenor con lo anterior, si luego de que se realiza un análisis ponderado sobre la prueba desfilada, se sostiene que existe duda razonable y fundada sobre si se probó la culpabilidad del acusado más allá de duda razonable, este Tribunal deberá dejar sin efecto el fallo o veredicto condenatorio emitido por el foro de primera instancia. *Pueblo v. Resto Laureano*, 206 DPR 963, 968 (2021). Es decir, en los casos de naturaleza criminal, no tendremos esa deferencia si: (1) hubo prejuicio, parcialidad o pasión, o (2) la prueba no concuerda con la realidad fáctica, es increíble o imposible. *Id.*

Conforme con estos principios, la determinación de culpabilidad que realiza el foro de primera instancia estará cobijada por una presunción de corrección y regularidad y, por ende, es merecedora de gran deferencia por parte de este Tribunal. *Pueblo v. Cabán Torres*, 117 DPR 645, 653-654 (1986).

## C.

La Sexta Enmienda de la Constitución de Estados Unidos y la Sección II del Art. II de la Constitución de Puerto Rico garantizan el derecho de toda persona acusada de un delito grave a ser juzgado por un jurado imparcial. *Pueblo v. Centeno*, 208 DPR 1, 10-11 (2021).

Nuestro ordenamiento jurídico presume que los deberes de un jurado se han cumplido con regularidad. No obstante, esa presunción puede rebatirse con prueba que demuestre la irregularidad del procedimiento. *Pueblo v. Santiago Acosta*, 121 DPR 727, 738-739 (1988). El veredicto no puede alterarse por indebida presión o influencia al jurado en ausencia de evidencia prima facie de que un elemento extraño permitió la decisión de mayoría. La confidencialidad del proceso deliberativo cede ante la existencia de evidencia prima facie de una anormalidad que afectó seriamente la realización de la justicia y el esclarecimiento de la verdad. Al acusado le compete rebatir la presunción de que el jurado basó su

veredicto en la prueba y no en hechos extraños o bajo indebida influencia o presión. El veredicto del jurado no puede atacarse bajo la premisa de prejuicio implícito, ya que debe demostrase un perjuicio real. El acusado que alegue error perjudicial tiene que demostrar que la decisión o actuación objetada tuvo impacto y relieve perceptible en la objetividad del juicio. *Pueblo v. Figueroa Rosa*, 112 DPR 154, 158-161 esc. 3 (1982).

La Regla 145 de Procedimiento Criminal, impone al tribunal la obligación de preguntarle al presidente del Jurado si el veredicto que se entregó por escrito es el del jurado y cuántos de sus miembros votaron en favor del mismo. El veredicto será aceptado por el tribunal y leído por el secretario, si el presidente responde en la afirmativa y es conforme a la ley. 34 LPRA sec. 145.

**D.**

La *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54-1969, 8 LPRA sec. 601*,* se promulgó en reconocimiento de que "la violencia doméstica es un comportamiento antisocial que constituye un serio problema para la familia puertorriqueña". Véase Exposición de motivos, Ley Núm. 54-1989, *supra.* El propósito de esta ley es atender la situación del maltrato de pareja que sufrían miles de personas en Puerto Rico, en su mayoría mujeres, y que no encontraba remedio en los recursos legales existentes. *Pueblo v. Ayala García*, 186 DPR 196, 207 (2012).

En lo pertinente, el Art. 2.1 de la Ley Núm. 54-1989, *supra* sec. 621, permite que una víctima solicite por sí, a través de su representante legal o por un agente del orden público, una orden de protección sin que sea necesaria la radicación previa de una denuncia o acusación. Estas órdenes pueden obtenerse de manera ex parte, en aquellos casos en que: (a) se han hecho gestiones de forma diligente para notificar a la parte peticionada, sin éxito; (b) si existe la probabilidad de que la notificación provoque el daño

irreparable que se intenta prevenir; o (c) si la parte peticionaria demuestra que existe una probabilidad sustancial de riesgo inmediato de maltrato. Art. 2.5 de la Ley Núm. 54-1989, *supra* sec. 625. La orden expedida al amparo de esta ley deberá ser notificada personalmente a la parte peticionada, ya sea a través de un alguacil del tribunal, un oficial del orden público, cualquier persona mayor de 18 años que no sea parte del caso o de acuerdo con el procedimiento establecido en las Reglas de Procedimiento Civil. Artículo 2.7 (b) de la Ley 54, 8 LPRA sec. 627.

El Artículo 2.8 de la Ley Núm. 54, *supra*, tipifica como delito grave la violación a una orden de protección. Dicho artículo dispone que "[c]ualquier violación a sabiendas de una orden de protección expedida, de conformidad con esta Ley, será castigada como delito grave de tercer grado en su mitad inferior, disponiéndose que los tribunales vendrán obligados a imponer supervisión electrónica, de concederse cualquier tipo de sentencia suspendida". *supra* sec. 628. La Ley 54, *supra*, no define el término "a sabiendas", no obstante, el Artículo 14(a) del *Código Penal de Puerto Rico de 2012*, Ley Núm. 146 de 30 de julio de 2012, según enmendada, 33 LPRA sec. 5014, establece que es sinónimo de "con conocimiento".

**III.**

En el caso de epígrafe, el apelante planteó dos (2) errores en su escrito de apelación, que se circunscriben a que el jurado cometió un error al emitir un veredicto de culpabilidad con prueba insuficiente para establecer los elementos del delito imputado. El apelante argumentó que, el Ministerio Público falló en demostrar que la Orden de Protección expedida por la Honorable Juez Catherine Brunelle Curet había sido diligenciada al señor Falcón Torres y, en consecuencia, no se estableció el elemento de "a sabiendas" que requiere el delito imputado.

Por estar relacionados los señalamientos de error procederemos a discutirlos en conjunto.

Evaluada la prueba testifical y documental admitida durante el juicio por jurado, concluimos que los errores levantados por el apelante no se cometieron. Veamos.

Durante el juicio por jurado, el Ministerio Público presentó el testimonio del Agente Rafael Dennis Sanabria (Agte. Dennis Sanabria) en el que declaró que, está adscrito a la división de Violencia Doméstica de Bayamón.[8] Manifestó que, el 4 de mayo del 2021, se encontraba laborando en el turno de 2:00 de la tarde a 10:00 de la noche.[9] Indicó que, ese día se le asignó la querella 2021-7-211-3105, presentada por la señora Paola Díaz Negrón (la señora Díaz Negrón), por violación a orden de protección.[10] Ante ello, procedió a entrevistar a la señora Díaz Negrón, quien le manifestó que, para el 19 de abril a eso de las 9:00 de la noche, se encontraba en su residencia, cuando recibió una llamada de un número de teléfono bloqueado y procedió a buscar otro teléfono para grabar la comunicación. Sostuvo que, esta le esbozó que, al contestar, reconoció la voz del señor Falcón Torres, quien es su expareja, que le pregunta si ella "iba a ir a una vista, tú vas a ir a la vista que hay mañana, no es que me importe pero quiero saber", "ella me dice que luego de que recibe, el señor Falcón Torres le dice eso pues procede a colgar la llamada telefónica".[11]

Testificó que, la señora Díaz Negrón, procedió a grabar esa llamada ya que, el día 17 de abril había recibido otra llamada, de parte del señor Falcón Torres, en la cual él le preguntaba si le había puesto una Ley Núm. 54-1989, *supra*, y que para ella tener

---

[8] Transcripción de la prueba oral (TPO) de la vista de 17 de julio de 2023. Pág. 4, línea 26-27.
[9] *Id.*, pág. 5, línea 29-31.
[10] *Id.*, pág. 6, línea 3-11.
[11] *Id.*, pág.6, línea 18-27.

evidencia, procedió a grabar la llamada del 19 de abril.[12] Manifestó que, según su investigación, la señora Díaz Negrón recibió aproximadamente siete (7) llamadas del señor Falcón Torres durante los días del 16 al 19 de abril.[13] También declaró que, la señora Díaz Negrón, recibió durante el mes de abril de 2021, varios mensajes tanto por mensajería de texto regular como por las redes sociales WhatsApp y Twitter y recibió múltiples llamadas de números bloqueados, pero en esa ocasión ella no procedió a contestar dichas llamadas.

Asimismo, testificó que, para la fecha del 23 y 25 de abril, la Sra. Díaz Negrón recibió una notificación de que se había etiquetado en unos *"twitt",* que habían sido realizados por el señor Falcón Torres, desde sus cuentas con *username* el duraco "Medea Bot" y la leyenda "Medea Bot" mencionando el *username* de la señora Díaz Negrón, que era "de fuego coral" y también menciona a la señora madre de la señora Díaz Negrón, Mercedes Negrón, con el *username* de meche *photo image.*[14]

Afirmó que, para la fecha de esos sucesos había una orden de protección vigente, OPA 2021-011854, la cual fue expedida el día 13 de abril 2021 por la Honorable Juez Catherine Brunelle Curet del Tribunal de Bayamón, con fecha vigencia hasta el 4 de mayo del 2021, y que dicha orden fue diligenciada el 16 de abril a las 10:30 de la mañana en el municipio de Cidra, por el alguacil del Tribunal de Caguas Omar Díaz Santiago.[15] Con el Agente Dennis Sanabria se admitió como Exhibit 1 del Pueblo, la Orden de Protección núm. OPA-2021-011854 expedida el 13 de abril de 2021 y diligenciada el 16 de abril de 2021 a las 10:33am.

---

[12] *Id.*, pág. 8, línea 4-9.
[13] *Id.*, pág. 8, línea 10-19.
[14] *Id.*, pág. 8, línea 23 al 31, pág. 9, línea 1-3.
[15] *Id.*, pág. 9, línea 23-29.

Por su parte, el Alguacil Omar Díaz Santiago, placa 877, del Tribunal de Caguas, adscrito a la Unidad de Citaciones y Arrestos, declaró que diligenció la Orden de Protección admitida como Exhibit 1 del Ministerio Público.[16] Indicó que, la orden de protección OPA2021-011854 fue expedida por el Tribunal de Bayamón, en el que la parte peticionaria era Paola Díaz Negrón y el peticionado, Omar E. Falcón Torres.[17] El Alguacil Díaz identificó al apelante como la persona a quien le diligenció la orden de protección exparte.[18] Declaró que recibió la orden de protección a las 8:00am y verificó el documento. La orden tenía una vigencia del 13 de abril de 2021 al 4 de mayo de 2021.[19] Asimismo, el Alguacil Díaz Santiago testificó que, diligenció el 16 de abril de 2021, junto con la Orden de Protección, el documento de Citación.[20] Expresó que, para diligenciar la orden y citación, se dirigió a la Gomera Germán, que queda en la carretera número 1 en Cidra.[21] Indicó que, la referida dirección estaba plasmada en el documento de citación.[22]

Narró que, en la Gomera dialogó con una persona que entendía era el hermano del apelante, se identificó como alguacil Omar Díaz, placa 877 del Tribunal de Caguas, y le informó que estaba buscando a Omar E. Falcón Torres, a lo que él le señala, al caballero que estaba sentado después de donde terminaría el acomodo de los vehículos; identificando nuevamente al apelante en sala.[23] Expresó que, luego de que le identifican al apelante, procedió a ir donde el caballero. Se identifica nuevamente y le preguntó si era Omar E. Falcón Torres, a lo que contestó en la afirmativa. Procedió a informarle que tiene una citación para el 4 de mayo en el Tribunal

---

[16] TPO vista del 20 de junio de 2023, pág., 132, línea 18-29.
[17] *Id.*, pág. 133, línea 7-19.
[18] *Id.*, pág. 131, línea 1-15.
[19] *Id.*, pág. 134, línea 1-12.
[20] *Id.*, pág. 135, línea 1-27.
[21] *Id.*, pág. 136, línea 15-21.
[22] *Id.*, pág. 137, línea 3-10.
[23] *Id.*, pág. 137, línea 22-31.

de Bayamón y una orden de protección bajo la Ley 54, ex parte. Le explicó que la orden era ex parte, no final ni firme.

Además, le explicó que, aunque es un procedimiento civil, el violentar la orden puede convertirse en un procedimiento criminal. Testificó que le explicó que no podía contactar a la peticionaria por medio de llamada, redes sociales, ni por terceros. Que tenía que leer el documento completo para conocer qué cosas podía hacer y no hacer; que debía presentarse en el tribunal para que pudiera expresar su versión en relación con las alegaciones de la orden de protección. El alguacil Díaz declaró que luego de toda la explicación, le preguntó al apelante si entendía y que este contestó en la afirmativa.[24]

Según se desprende de los testimonios antes reseñados, la prueba del Ministerio Público demostró todos los elementos del delito. Es decir, al amparo del Art. 2.8 de la Ley Núm. 54-1989, *supra*, se configuraron los siguientes elementos: (1) la existencia de una orden de protección vigente y (2) el conocimiento del imputado sobre la existencia de dicha orden.

La prueba testifical y documental admitida por el Ministerio Público demostró más allá de duda razonable que la Orden de Protección, OPA 2021-011854 fue diligenciada al apelante para el 16 de abril de 2021. Consecuentemente, el Ministerio Público demostró que el apelante tenía conocimiento sobre la existencia de la referida orden de protección y la prohibición de comunicarse con la señora Díaz Negrón. Asimismo, la prueba demostró las llamadas telefónicas que realizó el apelante al celular de la señora Díaz Negrón durante los días 16 al 19 de abril de 2021, a pesar de que éste tenía conocimiento de la existencia de la orden de protección.

A la luz de lo anterior, es forzoso concluir que el foro primario no incurrió en los errores formulados por el apelante toda vez que,

---

[24] *Id.*, pág. 138, línea 9-30, pág. 139, línea 1-6.

este fue debidamente informado sobre la existencia de una orden de protección y las consecuencias que tendría el incumplimiento de dicha orden.

## IV.

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones